**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 23, 2003**

THE PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v                                                    No. 119889

DONNA ALICE YOST,

   Defendant-Appellant.

_____

TAYLOR, J.

   We granted leave to appeal in this case to determine whether the examining magistrate abused his discretion when he refused to bind defendant over for trial in the circuit court. Finding such an abuse occurred, we affirm the circuit court judgment that reinstated the charges.

## I. Proceedings below

   Donna Yost was charged with open murder, MCL 750.316(1)(a), and felony murder, MCL 750.316(1)(b),[1] of her

---

[1] "Murder committed in the perpetration of, or attempt to perpetrate . . . child abuse in the first degree . . . ."

seven-year-old daughter Monique, who died of an overdose of a prescription medication called Imipramine on Sunday, October 10, 1999.

The preliminary examination lasted seven days. The prosecution called several lay witnesses and two expert witnesses, Dr. Kanu Virani, a forensic pathologist who performed an autopsy, and Dr. Michael Evans, a toxicologist who analyzed a blood sample obtained during the autopsy. The defense also called several lay witnesses and three experts, Dr. David Fleisher, an expert in pharmocology; Dr. Laurence Simson, a forensic pathologist; and Dr. Alan Berman, a clinical psychologist. The district judge, in his role as examining magistrate, refused to bind defendant over for trial for lack of credible evidence of a homicide.

The prosecution appealed to the circuit court. That court reviewed the lengthy transcripts and determined that the record established a sufficient basis for finding that a homicide was committed and probable cause to believe that defendant committed it, and that the magistrate therefore had abused his discretion in refusing to bind defendant over.

Defendant appealed the circuit court's decision to the Court of Appeals. The Court of Appeals denied leave to appeal "for failure to persuade the Court of the need for immediate

appellate review."[2]  The Court of Appeals subsequently denied

defendant's motion for rehearing.[3]

Defendant next filed an application for leave to appeal

with this Court.  We granted leave to appeal limited to the

issues

> (1) whether the refusal of the magistrate to bind
> the defendant over for trial was an abuse of
> discretion, (2) what is the appropriate role of the
> magistrate at a preliminary examination in
> assessing the credibility of witnesses and how does
> that assessment affect the bindover decision, and
> (3) whether the reviewing court applied the correct
> standard of review in this case?[4]

## II. Preliminary examinations

Preliminary examinations are not constitutionally

required.  *Hall*, *supra* at 603.  Rather, the preliminary

examination is solely a creation of the Legislature, i.e., it

---

[2]Unpublished order, entered June 6, 2001 (Docket No.
234065).  If the Court of Appeals had denied leave to appeal
"for lack of merit," we would comment no further.  However,
the ground cited by the Court of Appeals for denying leave to
appeal was "failure to persuade the Court of the need for
immediate review."  This reason was flawed. If defendant went
to trial and were found guilty, any subsequent appeal would
not consider whether the evidence adduced at the preliminary
examination was sufficient to warrant a bindover.  *People v
Hall*, 435 Mich 599, 601-603; 460 NW2d 520 (1990) (an
evidentiary deficiency at the preliminary examination is not
a ground for vacating or reversing a subsequent conviction
where the defendant received a fair trial and was not
otherwise prejudiced by the error).

[3]Unpublished order, entered July 24, 2001 (Docket No.
234065).

[4]465 Mich 966 (2002).

3

is a statutory right.[5]

MCL 766.13 provides:

> If it shall appear to the magistrate at the conclusion of the preliminary examination either that an offense has not been committed or that there is not probable cause for charging the defendant therewith, he shall discharge such defendant. If it shall appear to the magistrate at the conclusion of the preliminary examination that a felony has been committed and there is probable cause for charging the defendant therewith, the magistrate shall forthwith bind the defendant to appear before the circuit court of such county, or other court having jurisdiction of the cause, for trial.

As the statute indicates, the preliminary examination has a dual function, i.e., to determine whether a felony was committed and whether there is probable cause to believe the defendant committed it. At the examination, evidence from which at least an inference may be drawn establishing the elements of the crime charged must be presented. *People v Doss*, 406 Mich 90, 101; 276 NW2d 9 (1979). The probable-cause standard of proof is, of course, less rigorous than the guilt-beyond-a-reasonable-doubt standard of proof. *Id.* at 103. Probable cause requires a quantum of evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief" of the accused's guilt. *People v Justice (After Remand)*, 454 Mich

---

[5]However, as explained in *People v Glass (After Remand)*, 464 Mich 266, 271; 627 NW2d 261 (2001), the right to a preliminary examination does not apply if a defendant is indicted by a grand jury.

4

334, 344; 562 NW2d 652 (1997). Yet, to find probable cause, a magistrate need not be without doubts regarding guilt. The reason is that the gap between probable cause and guilt beyond a reasonable doubt is broad, *id*. at 344, and finding guilt beyond a reasonable doubt is the province of the jury. *People v Goecke*, 457 Mich 442, 469-470; 579 NW2d 868 (1998).

### III. Standard of Review

Our case law has sometimes indicated that a reviewing court may not reverse a magistrate's bindover decision absent a "clear abuse of discretion," e.g., *People v Dellabonda*, 265 Mich 486, 491; 251 NW 594 (1933); *Doss*, *supra* at 101. At other times our case law has omitted the word "clear" and has simply required a reviewing court find an "abuse of discretion," e.g., *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 121; 215 NW2d 145 (1974); *Justice, supra* at 344.

In defining what an "abuse of discretion" is, this Court has frequently invoked the test adopted in *Spalding v Spalding*, 355 Mich 382; 94 NW2d 810 (1959). As *Spalding* stated the test, an abuse of discretion occurs when the lower court's decision is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or

5

bias." *Id.* at 384-385.[6]

IV. Magistrate's consideration of credibility

Our prior case law recognizes the propriety of an examining magistrate's considering the credibility of witnesses. In *People v Paille #2,* 383 Mich 621, 627; 178 NW2d 465 (1970), the examining magistrate, when faced with several collusive witnesses, was struck with their inability to coordinate their testimony. He concluded that their testimony was incredible and "could not possibly convince a disinterested arbiter of facts of their good faith or their truthfulness." *Id*. at 624. They were, as he described it, engaged in "calculated prevarication to the point of perjury . . . ." *Id*. This Court, in reviewing the matter, indicated that a magistrate in determining whether a crime has been committed has not only the right, but the duty, to pass judgment on the credibility of the witnesses.[7] *Id*. at 627.

---

[6]While the propriety of utilizing the *Spalding* test in criminal cases has been questioned, *People v Williams*, 386 Mich 565, 573; 194 NW2d 337 (1972), and *People v Talley*, 410 Mich 378, 393-397; 301 NW2d 809 (1981) (Levin, J., concurring) overruled in part on other grounds*, People v Kaufman*, 457 Mich 266, 276; 577 NW2d 466 (1998), we have continued to utilize the *Spalding* test, *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002); *People v Jackson*, 467 Mich 272, 277; 650 NW2d 665 (2002), and find no occasion to revisit this question today.

[7]Similar statements authorizing the examining magistrate to assess the credibility of witnesses are found in *Talley*, *supra* at 386, *People v King*, 412 Mich 145, 152-154; 312 NW2d 629 (1981), and *Justice, supra* at 343 n 14 (citing *King* with
(continued...)

6

While this holding clearly allows a magistrate authority to consider the credibility of witnesses, we have also instructed examining magistrates to not refuse to bind a defendant over for trial when the evidence conflicts or raises reasonable doubt of the defendant's guilt. *Yaner v People,* 34 Mich 286, 289 (1876), *Doss*, *supra* at 103, and *Goecke*, *supra* at 469-470.[8]

With regard to expert testimony, after the expert has been properly qualified by the court,[9] credibility determinations are generally handled in the same manner as for lay witnesses.

## V. The magistrate's decision

Analysis of a blood sample by a laboratory revealed Monique died from an overdose of Imipramine.[10] Dr. Virani testified that he did not find any pill residue or granular material in Monique's stomach during the autopsy. He used

---

[7](...continued) approval).

[8]There is some tension between these two principles. However, we find no need to clarify the interplay between these two principles in this opinion.

[9]As we stated in *People v Christel*, 449 Mich 578, 587; 537 NW2d 194 (1995), before permitting expert testimony, the court "must find that the evidence is from a recognized discipline, as well as relevant and helpful to the trier of fact, and presented by a witness qualified by 'knowledge, skill, experience, training, or education . . . .' MRE 702[.]"

[10]This medication had been prescribed to Monique to help prevent bedwetting.

this fact as the basis for his opinion that Monique had not taken the pills intact, i.e., the pills probably had been liquified and then ingested.  Dr. Virani also opined that children at the age of seven do not commit suicide.  Putting these propositions together, Dr. Virani concluded that a crime, homicide, had taken place.

Defendant called several expert witnesses.  Dr. Fleisher, a pharmacology expert, calculated that Monique had taken eighty-nine Imipramine pills and, because he was familiar with the dissolution characteristics of Imipramine, concluded there was no reason to expect to find pill residue in Monique's stomach even if she had taken the pills whole. A forensic pathologist, Dr. Simson, testified that, having considered Dr. Fleisher's dissolution testimony, he was not surprised that no pill residue was found and he could not conclude that a homicide had occurred.  Finally, Dr. Berman, an expert in suicidology, testified that while rare, children as young as seven have been known to commit suicide.

The magistrate in stating his ruling indicated that Dr. Virani's two major premises were rejected as "not credible." First, he disregarded Dr. Virani's opinion that there would have been pill residue in Monique's stomach if the pills had been taken intact because Dr. Virani was not qualified in pharmacology or pharmaceutics and because this conclusion was

8

"completely refuted" by qualified defense expert testimony. Second, he disregarded Dr. Virani's conclusion that children as young as seven do not commit suicide because Dr. Virani had limited training in psychiatry or psychology and because this conclusion was refuted by Dr. Berman. The gist of this was that the magistrate thought Dr. Virani was simply not qualified as an expert in these two areas. Having rejected these two points of Dr. Virani's testimony, the magistrate concluded that one would have to speculate to conclude that a homicide had occurred. Moreover, if a homicide did occur, there was little to link the defendant to it. Thus, the magistrate refused to bind defendant over.

## VI. The circuit court's opinion

The circuit court found that there was credible expert testimony on both sides and, thus, the magistrate had exceeded his authority by comparing the credibility of the experts. The court stated that Dr. Virani's expert opinion was not inherently incredible or unbelievable and, given the conflicting expert opinions, it was the responsibility of the fact-finder, not the magistrate, to resolve them.

The circuit court further indicated that, leaving aside Dr. Virani's two premises, there was enough other credible circumstantial evidence from which one could conclude that Monique's death was a homicide and that defendant killed her.

9

Circumstantial evidence included that (1) defendant had the opportunity to give Monique the pills because she was alone with the child during the day when the child ingested the pills and died, (2) there was evidence of motive in that defendant was angry and frustrated with Monique and had been punishing her (for leaving the yard without telling anyone) at the time Monique ingested the pills, (3) defendant initially told the police after Monique's death that all the family's medications were accounted for and that Monique could not have gotten into any of them, (4) defendant failed to tell the police at that time that Monique had previously been taking Imipramine, (5) three days after Monique died forty-six Imipramine pills mysteriously appeared in an upstairs room on the second floor, when, according to a neighbor, no pills were present in the room the day after Monique died, and (6) after the pills were "discovered," defendant told the police the pills must have been what killed Monique (this was before the toxicology report had been completed).

On the basis of all these, the judge concluded that these circumstances were sufficient to warrant a conclusion by a cautious person that the defendant had committed murder. The judge observed that the defendant was free to argue at trial that Monique committed suicide, but the possibility of suicide did not preclude a bindover of defendant where there was

10

sufficient other proof of homicide.  Thus, the circuit judge
concluded that the magistrate had abused his discretion and
the charges should be reinstated.

## VII. Analysis

After carefully reviewing this matter, we agree with the
circuit court that the examining magistrate abused his
discretion in refusing to bind defendant over for trial.

The magistrate rejected Dr. Virani's opinion testimony
that the lack of pill residue suggested the pills were not
taken whole, but liquified first and then swallowed.  It was
the magistrate's view that Dr. Virani was not qualified to
render such testimony where he did not know how long it took
Imipramine to dissolve in gastric juices.  It is unnecessary
for us to determine whether this ruling regarding Dr. Virani's
qualifications was correct because Dr. Virani's conclusion was
echoed in the testimony of another expert, the toxicologist,
Dr. Evans, who, because of his own knowledge of the
dissolution characteristics of Imipramine, concluded that,
given the large number of pills taken, residue should have
been present.[11]

---

[11]The district court's written opinion never mentioned Dr.
Evans's testimony, and thus it is unclear that this testimony
was ever considered.  This omission is significant because it
suggests that the district court, in making its bindover
decision, overlooked significant evidence that was relevant to
whether there was probable cause to bind over defendant for
trial.    Dr. Evans's testimony tended to support the
(continued...)

11

The second opinion component of Dr. Virani's testimony was that children at the age of seven do not commit suicide. Again, we need not deal with the ruling on Dr. Virani's qualifications in this area because the bindover decision could be made without expert testimony on the propensity of children to commit suicide. There were proofs in this case that would cause a cautious individual to have probable cause to believe that the prosecution had circumstantially established that defendant had committed murder. This is not to say that at trial a fact-finder could not be convinced that the child self-administered the pills, but that the prosecution has no duty at the preliminary examination to negate that theory to get defendant bound over for trial. It is enough that a reasonable person could believe that a crime by poisoning was shown and that defendant had motive[12] and

---

[11](...continued)
prosecutor's theory of the case while Dr. Fleisher's tended to support the defense's theory. Because the testimony of both experts was relevant to a substantial, disputed issue in this case, and because each witness's testimony was competent and credible, resolution of the conflict between them should have been left for the fact-finder at trial.

[12]The testimony established more than one possible motive. As the circuit court noted, defendant was angry and frustrated with Monique's behavior of leaving the yard without telling anyone where she was going. However, in addition to anger and frustration, there were other possible motives. Defendant told the police that Child Protective Services had been out to the house because Monique had said that defendant had mistreated her. Also, there was testimony that defendant knew the prosecutor's office wanted to interview Monique regarding
(continued...)

12

opportunity, as well as arguably incriminating actions and explanations.

In sum, we agree with the circuit court that the expert testimony in tandem with the circumstantial evidence, which included evidence relating to motive and opportunity, was sufficient to warrant a bindover. We conclude that the magistrate failed to give any weight to Dr. Evans's expert testimony when he should have, failed to give any weight to the lay testimony related to defendant's possible motive[13] and opportunity, and gave undue weight to the testimony regarding the propensity of children to commit suicide.[14] Thus, the magistrate abused his discretion when he concluded from all the evidence that probable cause to bind defendant over for trial did not exist.

_____

[12](...continued)
allegations that she had been molested by a teenager who had previously stayed at their house and that the teenager had indicated that Monique's nine-year-old brother had been molesting Monique. Further, neighbor Mary Jo Sheldon testified that just a few days before Monique died Monique had told her that her brother and father had molested her. Ms. Sheldon indicated that she reported this to defendant and that defendant slapped Monique and called her a liar.

[13]While motive is not an element of the crime, evidence of a possible motive was relevant to the bindover decision in this case.

[14]While a child's propensity to commit suicide was potentially relevant to whether a crime was committed and to the defense's theory of the case, the conflicting testimony on this issue amounted to the type of disputed fact that should normally be resolved by the trier of fact.

The fact that the magistrate may have had reasonable doubt that defendant committed the crime was not a sufficient basis for refusing to bind defendant over for trial. As we stated in *Justice*, *supra* at 344, a magistrate may legitimately find probable cause while personally entertaining some reservations regarding guilt.

For these reasons we affirm the judgment of the circuit court.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

CAVANAGH, WEAVER, and KELLY, JJ.

We concur in the result only.

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly

14