*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 25, 2024
9:58 AM

Plaintiff-Appellee,

v

No. 369208
Macomb Circuit Court
LC No. 2023-002550-FC

TREVION TERELLE SMITH-JOHNSON,

Defendant-Appellant.

Before: LETICA, P.J., and BOONSTRA and MARIANI, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the circuit court's order denying his motion to quash the information. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the attempted armed robbery and attempted murder of the alleged victim, for which defendant was arrested and charged on May 24, 2023. Defendant's preliminary examination began on July 19, 2023. On that first day of the preliminary examination, the victim testified that he operated a transportation business for celebrities and a trucking business that delivered general freight across the country. After midnight on Monday, May 8, 2023, the victim arrived at his Eastpointe home in his Cadillac Escalade after dropping off a celebrity and got out of the vehicle. The victim then heard someone located at the side of his home demand "everything" the victim had. The victim described his assailant as slightly taller than him and having brown skin, a goatee, and a slim build. The assailant was wearing all black clothing with a black "do-rag" rolled up at the top of his forehead and was holding a black gun. In court, the victim identified defendant as his assailant. The victim was on his porch when he told defendant that he would not

---

[1] *People v Smith-Johnson*, unpublished order of the Court of Appeals, entered February 16, 2024 (Docket No. 369208).

give him anything. The men were within a foot of each other. Defendant fired five or six shots at the victim. One bullet grazed the victim's leg and left a bullet hole in his shorts.

The victim ran to the side and rear of his vehicle. Although the victim did not have a weapon, he told defendant to "come get it," implying that he had a gun. Defendant walked backward away from the victim's home. The victim told defendant that he would kill him with his bare hands. The victim's leg began to sting, and he proceeded to drive to the police station. On the way, the police stopped him and checked his leg for a gunshot wound. The victim opted not to go to the hospital because he wanted to return home and check on his young children.

Two days later, the victim went to the police station and identified defendant as his assailant from a photographic lineup. Additionally, the victim was shown photographs of a man taken from a nearby BP gas station and identified defendant in the photos. Before the shooting, the victim was unfamiliar with defendant.

Defense counsel then cross-examined the victim, questioning him about the timeline and sequence of events, the proximity between him and the assailant during the incident, his description of the assailant to the police and at trial, and who he interacted with on the night of the incident. Defense counsel also presented the victim with various photographs and videos taken of the area during the police investigation.[2] The victim reiterated much of what he stated on direct examination, with defense counsel pressing him on various inconsistencies in his testimony. For instance, the victim initially testified that the shooting occurred between 1:00 and 2:00 a.m., but when defense counsel asked whether "[i]t couldn't have been 2:30 a.m.," he stated that he could not recall the exact time but knew that it occurred "around that time" in the morning. The victim also testified that he did not know how long after the robbery he had met with the police officers but, when pressed by defense counsel, the victim estimated five or ten minutes.[3] The victim acknowledged that he described his assailant as "brown skinned" during direct examination but as "dark skinned" to the investigating detective, explaining that he used the terms interchangeably. The victim also maintained that he had previously described his assailant as wearing a "do-rag" rather than a knitted cap, including when defense counsel indicated that he had video footage of the victim saying otherwise. The victim acknowledged that it was very dark outside during the incident and stated that he did not initially see defendant until they were approximately one foot from one another. The victim indicated that he did not drink or use any substances prior to the incident, and he confirmed that he was wearing his tinted prescription glasses at the time of the incident but said that "they only tint during the daytime."

---

[2] The victim identified each of the presented photographs and videos and used them to explain where he and defendant were standing when defendant started shooting at him, where his car was parked during the incident, where he ran to after defendant shot at him, and his various interactions with the police.

[3] The victim later acknowledged that the time on his watch in a photograph depicting his interaction with the police indicated that it was 2:39 a.m.

During cross-examination, the district court told defense counsel to "move on" from his line of questioning on three separate occasions for repeatedly asking the victim questions that were irrelevant "to what happened at that location on that date and time."[4] On one other occasion the court again instructed defense counsel to "move on" with his line of questioning because it was argumentative.[5]

At 4:25 p.m., the district court inquired how much cross-examination defense counsel had left because the court closed in five minutes. Defense counsel answered, "Lots." Defense counsel then asked one more question, and the court scheduled defendant's preliminary examination to continue on August 1, 2023.

When the hearing resumed on August 1, the district court noted that an in-chambers discussion had occurred between defense counsel, the officer-in-charge—Eastpointe Police Department Detective Brian Showers—and the prosecutor. Apparently, the victim had suffered a heart attack the day before the hearing and was hospitalized. This information was verified by defense counsel. Consequently, the victim's cross-examination would not continue at that time; rather, another hearing would be scheduled to address the victim's health and to finish cross-examination.

The August 1 hearing then continued with the testimony of Detective Showers. The parties both thoroughly questioned the detective, with his testimony spanning multiple hours. The detective testified that he was called to the scene of the shooting at approximately 3:00 a.m. Upon arrival at the victim's home, the detective observed that the victim had suffered a mild leg abrasion and had a hole through his left pant leg from a bullet that hit a "money roll" and ricocheted out of the victim's left side pocket. At the scene, the police found a single shell casing that had been fired from a semiautomatic weapon.

During the police canvass, a neighbor residing three houses to the west of the shooting provided video from a dash camera mounted on his car. It showed the victim driving by in his Escalade at 2:35 a.m. Shortly after, an argument is heard in the background followed by five

---

[4] The district court sustained relevancy objections raised by the prosecution when defense counsel repeatedly attempted to elicit the name of the celebrity that the victim had dropped off immediately prior to the incident, pressed the victim about his relationship with his "lady friend" with whom he was on the phone when the shooting and subsequent events occurred, and questioned the victim about the concert he had attended for work prior to the incident.

[5] Defense counsel played two video clips for the victim that were taken from police vehicle dash cameras and depicted an officer driving down the victim's street and arriving at the victim's home, and the victim was only able to identify his home in the second video. When defense counsel commented on the victim's failure to identify his home in the first video, the prosecution objected that counsel was being argumentative and noted that there was a lack of clarity in the video. Defense counsel then argued that he was not being argumentative, but the district court noted that the quality of the video was questionable and requested that the video be played again.

gunshots. About two minutes later, the victim drove his Escalade westbound past the neighbor's home toward Gratiot Avenue.

Detective Showers also learned that the shooting suspect was seen at a BP gas station located approximately a half-mile from the victim's home. He retrieved the gas station video and converted it into still photographs. The victim came to the police station for a photographic lineup and identified defendant as the assailant. The victim was then shown the BP photographs and again identified defendant as the assailant. In the BP photographs, defendant was wearing black pants, a black hoodie, and a black "do-rag" rolled above his ears.

Detective Showers learned that defendant had two cell phone numbers. Defendant's Verizon cell phone was determined to be "down river" and nowhere near the shooting incident. Defendant's T-Mobile cell phone was analyzed to be at defendant's home until 3:07 a.m. At that time, the phone traveled from defendant's residence to the BP gas station, where defendant was observed on video. The phone was at the BP location from 3:07 to 3:16 a.m. when it returned to defendant's residence, located a half-mile from the gas station. Detective Showers was unconcerned that defendant's cell phone was not located in proximity to the victim's residence because, in his experience, individuals leave their phones at home when committing criminal acts.

A couple of weeks after the robbery, defendant spoke to Detective Showers and denied committing the shooting. He stated that he worked between 60 to 80 hours a week and was in bed between 2:00 and 4:00 a.m. After being advised that the detective had secured video footage from the BP gas station, defendant admitted that he was at the BP gas station. Defendant also asked for a polygraph. Detective Showers could not recall how many times defendant asked for a polygraph, but he did not arrange for one. At the conclusion of Detective Showers's testimony, the trial court scheduled a Zoom hearing with the attorneys for the following day to address the victim's health status.[6]

The preliminary examination was scheduled to continue with further cross-examination of the victim on August 15, 2023. At the August 15 hearing, however, the prosecution informed the court that it was again unable to procure the victim's attendance. The prosecution explained that Detective Showers had heard from the victim that his work truck had broken down in Georgia. Detective Showers had subsequently tried to contact the victim to see if he could continue his testimony over Zoom that day, but had been unable to reach him. Defense counsel added that he would object to continuing the victim's cross-examination in that manner. The prosecution then moved for the court to bind defendant over for trial, arguing that the record as it stood was sufficient and any additional testimony from the victim at that point would be superfluous to the determination. The prosecution also noted its concern that the victim was intimidated or afraid to continue his testimony. Defense counsel opposed the prosecution's motion to bind over, arguing that he had a right to complete his cross-examination of the victim and that there was "no basis to even ask for not only a continuance in this matter but certainly not to actually bind over where the proofs are incomplete on the record." Defense counsel also asserted that the district court had

---

[6] There is no indication that this Zoom hearing was placed on the record, and no transcript was prepared.

-4-

represented in-chambers that the case would be dismissed if the victim failed to appear barring an actual medical emergency.

The district court expressed concern that the preliminary examination had been adjourned three times already on account of the victim and that it did not want defendant "sitting in jail any longer than he has to if there is no legal authority" for it. The court asked the parties to file briefs addressing whether the preliminary examination could be concluded before defendant completed his cross-examination of the complainant.

After receiving the briefs, the district court held a hearing on August 29, 2023, for argument on the prosecution's motion to bind over as well as a motion to dismiss the charges that had been filed by defendant. The prosecution argued that bindover was appropriate given the adequacy of the record that had been developed thus far, the unlikelihood that any further cross-examination of the victim would materially alter the probable-cause assessment, and the ongoing difficulties in securing the victim's attendance. As to the last point, the prosecution noted that it had again attempted to secure the victim's attendance to continue his testimony but the victim was in the hospital due to additional problems with his heart and it was unknown at that point how long he would be hospitalized. Defense counsel maintained that he had a right to complete his cross-examination of the victim, that there was no basis for further adjournment or continuance, and that dismissal of the charges without prejudice was thus in order. The court took the matter under advisement and scheduled a hearing for the following day to issue its ruling.

At the hearing on August 30, 2023, the district court first confirmed that the prosecution rested and that defendant had no witnesses other than the victim that he would call. The court then ruled that defendant would be bound over for trial, concluding that the evidence presented at that point was sufficient to establish probable cause and that the cases cited by defendant in support of his position were inapposite. Accordingly, defendant was bound over on charges of assault with intent to murder, MCL 750.83; assault with intent to rob while armed, MCL 750.89; armed robbery, MCL 750.529; felon-in-possession of a firearm, MCL 750.224f; felon-in-possession of ammunition, MCL 750.224f(6); felonious assault, MCL 750.82; and six counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.

In the circuit court, defendant's motion to quash the information was denied, as was his motion for reconsideration. Defendant then sought leave to appeal. This Court granted leave, but "limited to whether the district court erred by binding defendant over to the circuit court without allowing him to complete his cross-examination of the complaining witness at the preliminary examination, see MCL 766.12; MCR 6.110(C), and whether the case should be dismissed or remanded to the district court for further proceedings as a result, see MCR 6.110(I)." *People v Smith-Johnson*, unpublished order of the Court of Appeals, entered February 16, 2024 (Docket No. 369208). This Court denied leave to appeal "[i]n all other respects . . . for lack of merit in the grounds presented." *Id.*

## II. STANDARD OF REVIEW

This Court reviews the decision to bind over a defendant for an abuse of discretion. *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). An abuse of discretion occurs when

a trial court's decision falls outside the range of reasonable and principled outcomes. *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022).

> At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome. When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment. [*People v Anderson*, 501 Mich 175, 189; 912 NW2d 503 (2018) (quotation marks and citation omitted).]

The interpretation of a statute or court rule is reviewed de novo. *People v Parker*, 319 Mich App 664, 669; 903 NW2d 405 (2017). A court "necessarily abuses its discretion when it makes an error of law." *Hawkins*, 340 Mich App at 173 (quotation marks and citation omitted).

"A circuit court's decision with respect to a motion to quash a bindover order is not entitled to deference because this Court applies the same standard of review to this issue as the circuit court." *Hudson*, 241 Mich App at 276.

## III. ANALYSIS

On appeal, defendant argues that the district court erred by binding him over for trial without allowing him to complete his cross-examination of the victim at the preliminary examination.[7] We disagree.

"The purpose of the preliminary examination is to determine whether a felony has been committed and whether there is probable cause for charging the defendant therewith," and "[i]f there is probable cause, the magistrate must bind the defendant to appear before the circuit court, or other court having jurisdiction of the cause, for trial." *People v Olney*, 327 Mich App 319, 328; 933 NW2d 744 (2019) (quotation marks and citation omitted); see also MCL 766.13; *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003). "At a preliminary examination, the prosecution must present evidence establishing that the defendant committed the charged offense, and the district court must find that probable cause exists to bind over a defendant for trial." *People v Fairey*, 325 Mich App 645, 648-649; 928 NW2d 705 (2018). "To satisfy this burden, the prosecution must present evidence of each and every element of the charged offense, or enough evidence from which an element may be inferred." *Id*. at 649. "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Yost*, 468 Mich at 126 (quotation marks and citation omitted). The district court must "consider all the evidence presented, including the credibility of witnesses' testimony," when making its decision on whether probable cause was shown. *Anderson*, 501 Mich at 178.

---

[7] Defendant also raises arguments in his appellate brief that are beyond the scope of this Court's order granting leave; as these issues are not properly before us, we will not address them further.

The probable-cause standard that must be met to bind a defendant over "is less rigorous than the requirement to find guilt beyond a reasonable doubt to convict a criminal defendant, and the gap between probable cause and guilt beyond a reasonable doubt is broad." *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010) (quotation marks, citation, and ellipsis omitted). "[T]herefore, unlike a jury, a magistrate may legitimately find probable cause while personally entertaining some reservations regarding guilt," *Anderson*, 501 Mich at 188 (quotation marks and citations omitted), and "a magistrate may not decline to bind over a defendant where there is a conflict of evidence, or where there is a reasonable doubt as to his guilt; all such questions should be left for the jury upon the trial," *id.* at 185 (quotation marks and citation omitted). Correspondingly, "in considering the credibility of witnesses, a magistrate may only decline to bind over a defendant if a witness's lack of credibility, when considered together with the other evidence presented during the examination, would preclude a person of ordinary prudence and caution from conscientiously entertaining a reasonable belief of the accused's guilt." *Id.* at 188 (quotation marks, citations, and alterations omitted).

The crux of defendant's claim of error is that he had a right to complete his cross-examination of the victim at the preliminary examination, and the district court's decision to bind him over before he finished that cross-examination violated that right. A defendant's right to a preliminary examination is statutory, not constitutional. *Id.* at 182, citing MCL 766.1. There is also no constitutional right to confront one's accusers at a preliminary examination. *Olney*, 327 Mich App at 331. Nor, as a general matter, is the testimony of the complainant otherwise required at a preliminary examination. See *id.* at 329 ("The testimony of the complainant is not necessarily required at every preliminary examination if sufficient other evidence is produced.") (quotation marks and citation omitted). Should the complainant testify, the defendant's cross-examination is, as with other witnesses, governed by statute and court rule. Under MCL 766.12, "[a]fter the testimony in support of the prosecution has been given, the witnesses for the prisoner, if he have any, shall be sworn, examined and cross-examined and he may be assisted by counsel in such examination and in the cross-examination of the witnesses in support of the prosecution." And MCR 6.110(C) states, in relevant part, that "[t]he court shall allow the prosecutor and the defendant to subpoena and call witnesses, offer proofs, and examine and cross-examine witnesses at the preliminary examination." If MCR 6.110(C) is violated, the case must either be dismissed or remanded back to the district court for further proceedings. MCR 6.110(H).

In addition, cross-examination of witnesses at a preliminary examination is generally subject to the rules of evidence. See *Anderson*, 501 Mich at 183, citing MCL 766.11b(1) (noting that "[t]he rules of evidence apply (with limited exceptions) to the proceeding"); MCR 6.110(C) ("The court must conduct the examination in accordance with the Michigan Rules of Evidence."). Under MRE 611(c), for instance, "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility[,]" and "[t]he judge may limit cross-examination with respect to matters not testified to on direct examination."[8] And under MRE 611(a), "[t]he court

---

[8] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. We rely on the version of MRE 611 in effect at the time this matter was decided by the trial court. We also note that any differences between the two versions of the rule do not have any bearing on our analysis here.

shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

Moreover, it is well settled that a court has inherent authority "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). And in the criminal context in particular, a court must bear in mind that the defendant is entitled to both a "*prompt* [preliminary] examination and determination" by the district court, MCL 766.1 (emphasis added); see also MCR 6.110(A), and a speedy trial, US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A). Accordingly, while a court may "adjourn, continue, or delay the examination" so long as there is consent or good cause to do so, MCL 766.7; see also MCR 6.110(B)(1), it can only do so in a manner consistent with these rights. See, e.g., *People v Den Uyl*, 320 Mich 477, 487-488; 31 NW2d 699 (1948) (recognizing that "[t]he absence of a material witness is good cause for continuance for a reasonable period, where it appears probable that the witness will be produced and will testify," but such continuance must comport with the defendant's statutory and constitutional rights to a prompt examination and speedy trial).

As these various sources of authority make clear, while a defendant may have a right to cross-examine the witnesses that testify at a preliminary examination, including the complainant, that right is not free from limitation, nor is it wholly beyond the discretion of the district court to manage as circumstances warrant and the law permits. And under the circumstances presented in this case, we do not see an abuse of that discretion in the district court's handling of defendant's right to cross-examine the victim. To start, there is no dispute that defendant was afforded at least some opportunity to cross-examine the victim. Indeed, the record indicates that the cross-examination lasted longer than the prosecution's direct examination[9] and, over the course of that cross-examination, defense counsel was able to question the victim—and press him on apparent inconsistencies in his testimony—regarding a wide range of matters, including his recollection of events, the timing of the incident, his identification of defendant, his conversations on the phone during the incident, and his interactions with police. And while, when the examination was first adjourned, defense counsel stated that he had "[l]ots" more questions for the victim, he did not— at that time or at any later point before the district court—meaningfully elaborate upon what exactly those questions might be or how they would materially bear on the court's ultimate assessment of probable cause.

Nonetheless, by the time the prosecution moved to bind defendant over, multiple attempts had been made to allow defendant to cross-examine the victim further, and the preliminary examination had been repeatedly adjourned due to difficulties in procuring the victim's attendance. Meanwhile, the district court had received other evidence and testimony and, consistent with

---

[9] The transcript indicates that the prosecution's direct examination of the victim lasted no more than 15 minutes and spanned about 14 pages of the transcript. Conversely, defense counsel spent at least 25 minutes questioning the victim on cross-examination, comprising approximately 23 pages of the transcript.

defendant's rights to a prompt determination and a speedy trial, was concerned about delaying the proceedings any further while defendant sat waiting in jail, particularly given the ongoing uncertainty regarding the victim's health status. And at that point, not even defendant was seeking further continuance of the preliminary examination; to the contrary, defense counsel opposed it, arguing that there was no valid basis for such and that the court was required to dismiss the charges. In other words, the parties did not dispute at that time that additional efforts to secure the victim's testimony were not warranted and a decision on whether to bind defendant over should be made.

Defendant maintains that the court's decision necessarily had to be made in his favor because he had not finished cross-examining the victim, but the law does not support that categorical proposition. As discussed, while defendant had a right to cross-examine the victim, none of the authority establishing that right entitled him to a cross-examination of a specific duration or to his own satisfaction. Rather, it was within the court's discretion to manage that cross-examination in light of various other considerations, including the efficient and effective ascertainment of truth, see MRE 611(a), and the constitutional and statutory rights to a prompt determination and a speedy trial, MCL 766.1; US Const, Am VI; Const 1963, art 1, § 20. See, e.g., *Den Uyl*, 320 Mich at 495 (explaining that the defendants' rights to a prompt determination and speedy trial required no further delay in the examination, and "[i]t is for the examining magistrate to decide whether the testimony already adduced is sufficient to bind the defendants over to the circuit court for trial, whether to afford an opportunity for further testimony, or to discharge the defendants").

Defendant stresses that "Michigan courts have routinely found an abuse of discretion *per se* when the district court fails to consider 'the whole matter' in making a probable cause determination"—which, according to defendant, means that the district court could not find probable cause without a completed cross-examination of the victim. The caselaw, however, does not do the work that defendant seeks to assign it in this case. As our Supreme Court has confirmed, "a magistrate's duty at a preliminary examination is to consider all the evidence presented, including the credibility of both the prosecution and defense witnesses' testimony, and to determine on that basis whether there is probable cause to believe that the defendant has committed a crime[.]" *Anderson*, 501 Mich at 188. In addition, "a magistrate's determination regarding the existence of probable cause must be made at the conclusion of the preliminary examination," which "strongly suggests that a magistrate must consider the totality of the evidence presented at that juncture, and that a magistrate must do so even if evidence introduced at the outset of the preliminary examination initially appears to have satisfied the elements of a criminal offense." *Id.* at 184, quoting MCL 766.13 (quotation marks, alteration, and ellipsis omitted). These are critical principles, to be sure. But neither they, nor the cases we have found reflecting them, purport to require that, before the district court concludes the preliminary examination and makes its probable-cause determination, the "totality of the evidence" must comprise a cross-examination of the complainant that the defendant is satisfied is complete. Instead, these legal principles exist alongside the sources of authority discussed above, together guiding the court's discretion in its management of this stage of proceedings.

According to defendant, the court necessarily violated these principles because, without a completed cross-examination, the court could not duly discharge its duty to weigh the credibility of the victim. Again, however, the law does not support the categorical rule defendant offers, and the record does not substantiate such a concern in this case. As discussed, the victim was subject

to substantial cross-examination, and defense counsel had the opportunity impeach his testimony on a number of matters. The victim's credibility was thus plainly put at issue and, while defense counsel wanted the opportunity to impeach him further, counsel did not meaningfully explain to the district court what exactly that further impeachment would entail and why it would materially impact the court's determination. On appeal, defendant is marginally more specific, but only identifies a few additional points regarding the victim's identification of defendant that he wished to impeach further. The reliability of the victim's identification, however, was addressed at some length during the cross-examination that did occur, and defendant still has not shown how additional questioning would have meaningfully contributed to the court's credibility assessment in that regard, let alone its ability to duly determine whether probable cause existed.

Nor, for that matter, do we see any deficiency in that ultimate determination, as the record before the district court was more than "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in [defendant's] guilt." *Anderson*, 501 Mich at 188 (quotation marks and citation omitted). The victim provided detailed testimony regarding the circumstances surrounding the attempted robbery and shooting, described the physical characteristics and outfit of his assailant, and identified defendant as his assailant in court. The victim also testified that he had identified defendant as his assailant two times prior during the police investigation: once during a photo lineup, and again when shown photos of defendant at the gas station near his home. Other evidence and testimony were corroborative of the victim's account. For instance, video footage showed the victim arriving at his home at around 2:35 a.m., and muffled arguing followed by five gunshots could be heard shortly after the victim's arrival. Detective Showers testified that he observed a bullet wound on the victim's leg that was consistent with the victim's description of events and had discovered a shell casing on the ground outside of the victim's home. The detective also testified that the victim identified defendant—a person whom he had never met before the incident—as his assailant during a photo lineup and again when he was shown photos of defendant at the gas station. Defendant's cell phone was located at a gas station approximately a half-mile from the victim's home shortly after 3:00 a.m., and video footage from the gas station showed defendant there wearing black pants, a black hoodie, and a black "do-rag" on his head, consistent with the description provided by the victim during the investigation and at the preliminary examination. The detective testified that during his interview with defendant, defendant claimed to be in bed at 3:00 a.m. on the night of the incident because he had no reason not to be, but when confronted with the gas-station video footage, defendant admitted to being at the gas station at that time.

Defendant makes no particular argument (nor could he, in our view) that this record, taken on its own, was insufficient to demonstrate probable cause. And while defendant maintains that he could have impugned the victim's credibility further, he has not demonstrated—below or on appeal—how any such additional impeachment would have resulted in a "lack of credibility" that, "when considered together with the other evidence presented during the examination, is so lacking that a person of ordinary prudence and caution would not conscientiously entertain a reasonable belief of the accused's guilt[.]" *Id.* at 188-189 (quotation marks, citation, and alteration omitted).

In sum, given all the circumstances presented, we cannot conclude that the district court abused its discretion by ending the preliminary examination when it did and binding defendant over for trial. While defendant had a right to cross-examine the victim, he has not shown that the court committed reversible error in its handling of that right in this case. This is not to say that the

court would have necessarily erred had it decided to manage this rather unusual and challenging situation differently; "[a]t its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome[.]" *Id*. at 189 (quotation marks and citation omitted). Nor is it to at all diminish the import of a defendant's right to cross-examination at the preliminary-examination stage, or to suggest that courts should do anything but tread very carefully in limiting the exercise of that right—both for the sake of the right itself, and in light of the downstream consequences that may attend its limitation.[10] Given the law and the record before us, however, we do not see adequate grounds to disrupt the district court's bindover decision in this case or, correspondingly, the circuit court's denial of defendant's motion to quash.

Affirmed.

/s/ Mark T. Boonstra
/s/ Philip P. Mariani

---

[10] It is well settled, for instance, that limitations on a defendant's cross-examination of a witness at the preliminary-examination stage may, as a matter of both evidentiary rule and constitutional right, impact the admissibility of that testimony at trial, should the witness prove to be unavailable to testify. See generally, e.g., *People v Wood*, 307 Mich App 485, 517-518; 862 NW2d 7 (2014), vacated in part on other grounds by 498 Mich 914 (2015). That the district court in this case did not abuse its discretion in its handling of the victim's preliminary-examination testimony does not mean that the testimony would necessarily be admissible at trial if the victim is unavailable to testify at that time. In fact, the prosecution conceded at oral argument before this Court that it would not.