*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

QUENSHAWN DAVAUGHN LITTLEJOHN,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2026
1:06 PM

No. 370579
Wayne Circuit Court
LC No. 21-000089-01-FC

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Defendant, Quenshawn Davaughn Littlejohn, appeals as of right his jury trial convictions for one count of first-degree murder, MCL 750.316; one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f; one count of carrying a concealed weapon, MCL 750.227; and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. On August 4, 2023, Littlejohn was sentenced to a term of life for first-degree murder, three to five years' incarceration for felon-in-possession, and three to five years' incarceration for carrying a concealed weapon, to be served consecutively to two years' incarceration for each felony-firearm conviction. We affirm Littlejohn's convictions, but we remand to the trial court for the ministerial correction of the judgment of sentence.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the fatal shooting of the decedent, Austen Cole, on July 18, 2020, at a Liquor Express store on Seven Mile Road, Detroit, Michigan. On that day, a group of individuals arrived at the liquor store together; Littlejohn, Malachi Barnhill, William Morris, and "D"[1]. The group purchased liquor from the store, and proceeded to socialize near the checkout area with the

---

[1] "D" was initially not identified as any person other than a "guy from the neighborhood," but "D" was subsequently referred to as "Smitty" later in the trial proceedings.

liquor they had purchased until an altercation took place, which led to the fatal shooting of the decedent.

Littlejohn testified on his own behalf during the jury trial. Littlejohn asserted that when he arrived at the liquor store with the others, he was already carrying his firearm because he was in an unfamiliar area and wanted to protect himself. Littlejohn recognized that he was barred from possessing a firearm due to his prior felonies. While he paid for his items at the counter, a man in a black shirt, subsequently identified as the decedent, walked past Littlejohn and said something to the effect of "what the f*** you looking at" to him. After making this comment, the decedent reached over Littlejohn's shoulder to fist bump the cashier. Littlejohn then claimed that he heard the decedent assert, in essence, "I should of, ah—I should of snatched—snatched your bust and that little a** chain," which left Littlejohn confused. Littlejohn recalled that the decedent's conduct "made him feel alert," because he had recently heard of someone being robbed and killed over a chain. Littlejohn and the decedent were subsequently face-to-face, with the decedent asserting, "You looking crazy; matter of fact, when we get outside I'll smoke you and take your s**t." Once these words were allegedly said, Littlejohn feared for his life and withdrew his firearm. An altercation for control over the firearm ensued, and Littlejohn testified that the decedent grabbed his chain while Barnhill attempted to break the two up. After the decedent grabbed onto Littlejohn's chain, Littlejohn saw the decedent make a gesture that made it seem like he also had a firearm, resulting in Littlejohn shooting the decedent.

Morris testified that he had been inside the liquor store with Littlejohn but stepped outside to take a phone call from his fiancé. While he was outside the store, the decedent walked past him and commented on his jewelry, stating that it was "looking good" before entering the store. Barnhill testified that after Morris left, an altercation between Littlejohn and the decedent began shortly after the decedent entered the store and stood behind Littlejohn, giving the cashier a "fist bump" over Littlejohn's shoulder. Barnhill attempted to stop the altercation, but he became scared when Littlejohn's firearm was pointed close to Barnhill as he tried to pull it away. Barnhill testified that he "just wanted to get out of there" after the firearm was pointed at him and he fled toward the door. Morris testified that he heard a single gunshot while outside, walked to his vehicle, started it, and locked the doors. Littlejohn then came to the passenger door of Morris's vehicle, and Morris unlocked it for him, allowing Littlejohn into the vehicle and driving him to his own vehicle. Morris testified that he saw Littlejohn put what appeared to be a weapon into his pants as he approached the passenger seat of the vehicle leaving the liquor store. Morris asked Littlejohn what happened with regard to the gunshot, but he received no explanation. Both Morris and Barnhill testified that they could not recall the decedent speaking to or threatening Littlejohn.

During the jury trial, video exhibits depicting the underlying shooting were admitted into evidence. The footage portrayed Littlejohn and his friends socializing near the checkout area of the liquor store when the decedent walks into the store, proceeds to stand behind Littlejohn, and gestures to the cashier behind the counter. Littlejohn then turns to confront the decedent, resulting in an altercation between the two, with Barnhill attempting to halt the confrontation and remove the firearm from Littlejohn's right hand. Littlejohn pushes the decedent into a store aisle and holds him at gunpoint, resulting in Barnhill repeatedly attempting to stop the altercation. As Barnhill is unsuccessful in intervening, he leaves the store, and Littlejohn shoots the decedent, standing over him. Littlejohn then collects his items from the counter and leaves the premises.

Following the presentation of proofs, Littlejohn was convicted and sentenced as provided earlier. This appeal ensued.

## II. BINDOVER

Littlejohn argues that the district court abused its discretion when it bound him over to the circuit court on charges of first-degree murder because the prosecution did not present sufficient evidence to prove premeditation, malice, or deliberation. We disagree.

This Court in *People v Crumbley*, 346 Mich App 144; 11 NW3d 576 (2023), clarified the standard of review applicable to reviewing a circuit court's decision granting or denying a motion to quash a bindover:

> In the context of reviewing a district court's bindover decision, the order on appeal is the circuit court's decision denying the motion to quash, which we review de novo (i.e., with no deference) because the dispositive question is whether the district court abused its discretion in binding over defendants. Thus, although we give no deference to the circuit court's findings in its review of the district court decision, we give a great deal of deference to the district court's decision, that is, we review that decision for an abuse of discretion. At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome. An abuse of discretion occurs when a decision falls outside the range of reasonable and principled outcomes, and a trial court necessarily abuses its discretion when it makes an error of law. However, [t]o the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo. [*Id*. (quotation marks and citations omitted).]

The purpose of a preliminary examination is to determine whether a crime was committed and whether there is probable cause to believe that the defendant committed it." *People v Rogers* 338 Mich App 312, 330-331; 979 NW2d 747 (2021) (quotation marks and citation omitted). Stated specifically, "in order to bind a defendant over for trial in the circuit court, the district court must find probable cause that the defendant committed a felony based on there being evidence of each element of the crime charged or evidence from which the elements may be inferred." *People v Simon*, 339 Mich App 568, 580; 984 NW2d 800 (2021) (quotation marks and citation omitted). "Probable cause requires enough evidence to cause a person of ordinary caution and prudence 'to conscientiously entertain a reasonable belief' of the defendant's guilt." *People v Ridge*, 319 Mich App 393, 403; 901 NW2d 406 (2017), quoting *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003). "The district court abuses its discretion by binding over a defendant when the prosecution has failed to present sufficient evidence to support each element of the charged offense." *Simon*, 339 Mich App at 580.

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 266; 893 NW2d 140 (2016). "Premeditation and deliberation are the legislative offspring and are to be construed in the light of the statutory scheme." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018). "We have

recognized the ordinary meaning of the distinct and separate terms as the following: "[t]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Id*. "The real focus of first-degree murder jurisprudence in Michigan has been on the kind of evidence which permits an inference of premeditation and deliberation," and that inference may be established "from all the facts of the case." *Id*. at 241.

At the January 12, 2021 preliminary examination, the district court heard testimony from Morris, in addition to Darrien Jones, a customer at the liquor store when the shooting occurred. Morris testified that he went to the liquor store with the group, left to speak with his fiancé on the phone, heard a gunshot, and then left the premises to return to his vehicle. Jones testified that he visited the liquor store that night with a friend, saw Littlejohn there, and identified himself on the security camera video. Jones later identified himself to the court as "Smitty"[2]. Following the testimonies of the aforementioned witnesses and review of the security camera footage previously described, the district court determined there was probable cause to establish that Littlejohn committed first-degree murder, and it bound the case over to the circuit court.

Littlejohn contends that because there was clear provocation from the decedent, the prosecution failed to prove the elements of premeditation and deliberation. Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide. *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). A lapse in time between the initial homicidal intent and the ultimate killing is necessary to establish premeditation and deliberation. *Id*. However, the time required need only be long enough "to allow the defendant to take a second look." *Id*.

The video exhibits depicting the underlying shooting first portray Littlejohn walking over to where the decedent was standing, speaking to him, drawing his firearm, and aiming it at the decedent. This action took sufficiently long enough to meet the "second look" threshold in *Unger*. Littlejohn continued to hold the decedent at gunpoint despite Barnhill's repeated efforts to break the two apart, adding more time to take a second look and think about what he was doing. Lastly, after shooting the decedent, Littlejohn stood over the decedent's body and calmly left the store after collecting his items at the counter. In light of the foregoing, there was probable cause to bind Littlejohn's case over on the charge of first-degree murder.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Littlejohn argues that he was deprived of effective assistance of counsel when his counsel neglected to show him Barnhill's interrogation video, which resulted in his decision to decline a plea agreement. We disagree.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). The proper remedy for ineffective assistance of counsel during plea negotiations will depend on the circumstances of the case, but it could potentially entail resentencing or requiring a rejected plea

---

[2] He is subsequently referred to interchangeably as "D" and "Smitty."

to be reoffered. *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020). This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

The United States Constitution and Michigan Constitution guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. A defendant's right to effective assistance of counsel "extends to the plea-bargaining process." *Lafler v Cooper*, 566 U.S. 156, 162 (2012). An ineffective assistance claim can be based on the rejection of a plea offer if the rejection is the result of an unprofessional error by defense counsel that results in a more severe sentence following a trial. *Id*. at 156-157. In order to prevail on a claim of ineffective assistance of counsel under the *Strickland*[3] standard, the defendant must establish "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. When a defendant claims to be prejudiced by rejecting a plea offer on the basis of ineffective assistance of counsel, the defendant must show (1) "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "that the court would have accepted its terms"; and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *People v White*, 331 Mich App 144, 150-151; 951 NW2d 106 (2020).

Littlejohn contends that he was denied effective assistance of counsel because he was not shown footage of Barnhill's interrogation, and that he would have accepted a plea agreement if he reviewed the footage. To establish that his counsel's performance fell below the objective standard of reasonableness in *Strickland*, Littlejohn must prove that the statements made by Barnhill in the interrogation video were so harmful to his case that he would have accepted the June 15, 2023, plea agreement at pretrial. *Id*. at 149. Littlejohn must demonstrate under *White* that but for his counsel's deficient performance, a plea agreement resulting in a less severe sentence would have been reached. *Id*. at 150-151.

Under the three-part test in *White*, Littlejohn has not shown he would have *accepted* the plea offer had his counsel shown him the interrogation video. The decision to accept or reject a plea agreement belongs with the defendant alone, and Littlejohn was unequivocal about his intention to reject both plea offers. On June 15, 2021, Littlejohn was offered a plea agreement reducing his charges to second-degree murder with a sentence of 28 to 40 years' incarceration, in addition to two years' incarceration for each felony-firearm conviction, to be served consecutively. The following colloquy occurred:

> *The Court*: Got it. And, counsel, you've relayed that offer to your client?

---

[3] *Strickland v Washington*, 466 US 668, 690-691; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

[*Defense Counsel*]: Okay.  Mr. Littlejohn.

*The Defendant*: No.

On September 21, 2021, Littlejohn was again offered a second plea agreement which would reduce his charges to second-degree murder with a sentence of 33 to 60 years' incarceration, in addition to two years' incarceration for each felony-firearm conviction, to be served consecutively.  The following exchange transpired:

*The Court*: All right.  [Defense Counsel], you have heard this offer again.  And, Mr. Littlejohn, you've heard the offer.  Do you accept or reject?

*The Defendant*: I reject.

Littlejohn has failed to demonstrate that he would have actually accepted either of the plea agreements presented on the record if he had seen the Barnhill interrogation video.  Further, Littlejohn has not established a factual predicate in his brief on appeal or his Standard 4 brief[4] to show that the content of Barnhill's interrogation video was so distinct from the other evidence presented that it would fall below the *Strickland* standard for his counsel to omit providing it.  See *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (stating because the "defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim") (quotation marks and citation omitted).

As Barnhill's statements in the interrogation were quite similar to his testimony at trial, the description provided in the Detroit Police's Investigator's report, and the video exhibits, counsel's decision not to present the interrogation footage to Littlejohn did not constitute ineffective assistance under the *Strickland* standard.  The relevant video exhibits depict that Barnhill attempted to break up the altercation between Littlejohn and the decedent, and Barnhill eventually fled the scene when he was unsuccessful.  Further, the security footage of the shooting was arguably more damaging to Littlejohn's case than any interrogation video may have been.  Additionally, Littlejohn raised no objection at sentencing to the agent description of the offense, which included a description of Barnhill's interrogation as detailed in the Detroit Police Investigator's report dated July 27, 2020, which Littlejohn would have had the opportunity to review during the pretrial plea process.  Thus, Littlejohn is not entitled to relief on this basis and his trial counsel was effective.

## IV.  SUFFICIENCY OF THE EVIDENCE

Littlejohn argues that there was insufficient evidence to disprove his self-defense claim, and that the prosecution committed misconduct in depicting him as the aggressor at trial.  We disagree.

---

[4] A "Standard 4" brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Byczek*, 337 Mich App 173, 182; 976 NW2d 7 (2021). In evaluating a defendant's claim concerning the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecution to discern whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

Self-defense is defined under MCL 780.972, which states, in pertinent part:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

MCL 780.951(1)(a), regarding the presumption of self-defense, further provides:

(1) Except as provided in subsection (2), it is a rebuttable presumption in a civil or criminal case that an individual who uses deadly force or force other than deadly force under section 2 of the self-defense act has an honest and reasonable belief that imminent death of, sexual assault of, or great bodily harm to himself or herself or another individual will occur if both of the following apply:

(a) The individual against whom deadly force or force other than deadly force is used is in the process of breaking and entering a dwelling or business premises or committing home invasion or has broken and entered a dwelling or business premises or committed home invasion and is still present in the dwelling or business premises, or is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will.

(b) The individual using deadly force or force other than deadly force honestly and reasonably believes that the individual is engaging in conduct described in subdivision (a).

In order to prove self-defense, first, Littlejohn must have honestly and reasonably believed that he was in danger of being killed or seriously injured. *People v Goree*, 296 Mich App 23, 297; 819 NW2d 82 (2012). Littlejohn must have also feared that he would be killed or seriously injured and honestly believed that deadly force was immediately necessary to prevent this. *Id*. The prosecution bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *People v Smith*, ___Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 362114); slip op at 9. This Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime. *Id*. All factual conflicts are to be viewed in a light favorable to the prosecution. *People v Lowrey*, 342 Mich App 99, 122; 993 NW2d 62 (2022). The appellate court must "view the evidence in a light most favorable to the prosecution and determine

whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. Differing versions of events merely establish that "it is for the jury to determine witness credibility and resolve inconsistencies of testimony." *People v Harverson*, 291 Mich App 171, 179; 804 NW2d 757 (2010).

Littlejohn first contends that there was insufficient evidence to disprove his claim of self-defense. Littlejohn does not dispute that he shot the decedent, but that he feared for his life and believed that the shooting was necessary to protect himself. The circumstances leading to the shooting were enough for a rational trier of fact to conclude beyond a reasonable doubt that Littlejohn was not justified in shooting the decedent, nor did he fear for his life. Testimony from Littlejohn at trial conflicted with testimony of the other witnesses at the scene. Littlejohn testified that he heard the decedent say that he was going to "smoke him" outside, and "steal his chain." Both Barnhill and Morris testified that they heard no threats or other words exchanged between Littlejohn and the decedent. The decedent further did not have a weapon, and the pertinent video exhibits clearly depict Littlejohn approach the decedent and hold him at gunpoint. Viewing the evidence presented at trial in a light most favorable to the prosecution, it is clear that the prosecution presented sufficient evidence to disprove Littlejohn's self-defense claim. The jury decided to resolve the credibility issue in favor of the prosecution, choosing to discredit Littlejohn's assertion that he feared for his life. Littlejohn also testified that he drew his weapon because he feared that the decedent was going for a weapon of his own. The video exhibits nonetheless portray Littlejohn reaching into his back pocket for his firearm the moment he turns toward the decedent. Accordingly, the prosecution's characterization of Littlejohn as the aggressor was consistent with the proofs presented at trial, such that it cannot be deemed misconduct.

Based on the record developed at trial, the evidence was sufficient to show that the prosecution disproved Littlejohn's claim of self-defense beyond a reasonable doubt because he did not act in self-defense when he withdrew his weapon and held the unarmed decedent at gunpoint, shooting him as he fell to the ground. The video exhibits presented by the prosecution further established that Littlejohn had drawn his firearm before he reached the decedent, and testimony from witnesses at the scene corroborated that the decedent said nothing to Littlejohn that would suggest an intent to harm him. There was sufficient evidence to support Littlejohn's convictions with consideration for his self-defense theory.

## V. SENTENCING

Lastly, Littlejohn argues that he was improperly sentenced, in that a conviction of carrying a concealed weapon cannot run consecutively to a felony-firearm conviction. We agree.

The trial court's authority to order a consecutive sentence is a question of law subject to de novo review. *People v Spann*, 250 Mich App 527, 529; 655 NW2d 251 (2002). The imposition of consecutive sentences without statutory authority is considered plain error. *People v Bailey*, 310 Mich App 703, 726; 873 NW2d 855 (2015). Under this standard, the reviewing court should reverse if clear error affected substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

MCL 750.227b, the felony-firearm statute, states in pertinent part:

(1) A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, 227[5], 227a, or 230, is guilty of a felony and shall be punished by imprisonment for 2 years. Upon a second conviction under this subsection, the person shall be punished by imprisonment for 5 years. Upon a third or subsequent conviction under this subsection, the person shall be punished by imprisonment for 10 years.

As opined by the Michigan Supreme Court, "From the plain language of the felony-firearm statute, it is evident that the Legislature intended that a felony-firearm sentence be consecutive only to the sentence for a specific underlying felony." *People v Clark*, 463 Mich 459, 463; 619 NW2d 538 (2000) (footnotes omitted). The *Clark* Court further noted, "No language in the statute permits consecutive sentencing with convictions other than the predicate offense." *Id*. at 464. The felony-firearm statute expressly precludes carrying a concealed weapon as a predicate felony. Accordingly, Littlejohn's sentence for carrying a concealed weapon cannot be made consecutive to the felony-firearm sentences because that offense cannot serve as the predicate felony for the charged felony-firearm offenses. See *People v Taybron*, 486 Mich 899, 899 (2010). We remand for the ministerial correction of this error. See MCR 6.435(A); MRC 7.216(A)(7).

We affirm Littlejohn's convictions. We remand to the trial court for the ministerial task of correcting Littlejohn's judgment of sentence. We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi

---

[5] MCL 750.227 is the concealed weapons statute.